**Thomas E. SUMMERS, Jr., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver of Penn Square Bank, N.A.; Richland Resources Corporation; Don D. Tapper; The Chase Manhattan Bank, N.A.; Commerce Bank, an Oklahoma banking corporation; and Continental Illinois National Bank and Trust Company of Chicago, Defendants.**

**No. CIV–83–1524–E.**

United States District Court,
W.D. Oklahoma.

Sept. 5, 1984.

---

Grey W. Satterfield and Dennis S. Boxeur, Kornfeld, Satterfield, McMillin, Harmon, Phillips & Upp, Oklahoma City, Okl., Lance Stockwell, Craid A. Stokes, Boesche, McDermott & Eskridge, Tulsa, Okl., Susan R. Byrd, Harry A. Woods, Jr., Crowe & Dunlevy, George Nelson and Chris Caldwell, John W. Vardaman, Jr., John K. Villa, Stuart L. Gasner, Williams & Connolly, Washington, D.C., Peter B. Bradford and Clifford A. Jones, Bradford, Haswell, & Jones, Oklahoma City, Okl., Richard B. Noulles and Jeffrey W. Otto, Gable & Gotwals, Tulsa, Okl., Gerald D. Mindell, Arthur F. Radke, Paul K. Vickrey, Chicago, Ill., for defendants.

## OPINION AND ORDER

EUBANKS, Chief Judge.

Before the Court is the motion of the defendant Federal Deposit Insurance Corporation ["FDIC"], as receiver of the defunct Penn Square Bank, N.A., to strike the plaintiff's claim for treble damages under the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. § 1964(c) (1982). Pursuant to the Court's order of July 9, 1984, the parties have submitted supplemental briefs and the motion is now at issue. For the reasons stated below, the motion is granted.

This Court has previously ruled that punitive damages, permissible under state law, cannot be assessed against the FDIC as receiver of a failed bank. *E.g., Professional Asset Management, Inc. v. Penn Square Bank, N.A.*, 566 F.Supp. 134 (W.D. Okla.1983). However, the allowability of treble damages under RICO against the FDIC is a question of first impression.

This is, fundamentally, a question of statutory construction. The resolution of that question must begin with the statute itself. *E.g., United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Section 1964(c) of RICO provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter ... shall recover threefold the damages he sustains..." 18 U.S.C. § 1964(c).

Richard D. Hampton and Jim Hanna, Oklahoma City, Okl., for plaintiff.

■ Although Congress used the verb "shall" in Section 1964(c), it is not necessarily mandatory. *See* 2A C. Sands, *Sutherland on Statutory Construction* § 57.03 (1973). The treble damages provision of Section 1964(c) is drawn from federal antitrust law,[1] specifically Section 4 of the Clayton Act, 15 U.S.C. § 15 (1982).[2] *See, e.g.,* 115 Cong.Rec. 9567 (1969) (statement of Sen. McClellan). Early cases construing the nearly identical language in the Clayton Act implied that a treble damages·action survived the death of a defendant-violator, but did not so hold. *Barnes Coal Corp. v. Retail Coal Merchants Ass'n,* 128 F.2d 645, 649 (4th Cir.1942); *Hicks v. Bekins Moving & Storage Co.,* 87 F.2d 583, 585 (9th Cir.1937); *Moore v. Backus,* 78 F.2d 571, 575–76 (7th Cir.1935), *cert. denied,* 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455 (1935). *See* American Bar Association Section of Antitrust Law, *Antitrust Developments 1955–1968* 305 & n. 37 (1968); A. Stickells, *Federal Control of Business— Antitrust Laws* § 188 at 712 (1972). However, courts that have confronted the issue directly have held that such actions survive only for actual, not treble, damages. *Rogers v. Douglas Tobacco Board of Trade,* 244 F.2d 471, 483 (5th Cir.1957); *RSE, Inc. v. H & M, Inc.,* 90 F.R.D. 185 (M.D.Pa. 1981); *Shires v. Magnavox Co.,* 432 F.Supp. 231, 235 (E.D.Tenn.1976); *Vandervelde v. Put & Call Brokers & Dealers Ass'n,* 344 F.Supp. 118, 156–57 (S.D.N.Y. 1972); *Haskell v. Perkins,* 28 F.2d 222, 224 (D.N.J.1928), *rev'd on other grounds,* 31 F.2d 53 (3d Cir.1929), *cert. denied,* 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1007 (1929). *See* American Bar Association Section of Antitrust Law, *Antitrust Law Developments (Second)* 483 (1984). The rationale on which these decisions are based is that treble damages under Section 4 are penal in character and should not be assessed against the estate of a deceased malefactor. *E.g., Rogers, supra,* 244 F.2d at 483.

■ This rationale is compelling and applies with equal or greater force to RICO treble damages against the FDIC as receiver. The test of whether treble damages are penal has three parts: one, whether the purpose of the statute is to redress individual or public wrongs; two, whether recovery under the statute runs to the injured individual, or to the public; and three, whether the authorized recovery is wholly disproportionate to the harm suffered. *Murphy v. Household Finance Corp.,* 560 F.2d 206, 209 (6th Cir.1977) (stating the test and collecting the cases). First, in promulgating RICO, Congress expressly found that the problem of recketeering was primarily public, not private, including draining resources from the economy, subverting the democratic process, and undermining the general welfare. 84 Stat. 922–23 (1970) (findings and purpose of the Organized Crime Control Act of 1979, title IX of which is RICO). Second, a treble damage award under RICO runs to a "person injured in his business or property by reason of a violation of Section 1962..." 18 U.S.C. § 1964(c). Third, treble damages under RICO are wholly disproportionate to the injury, just as in the Clayton Act. *See* 3 C. Sands, *Sutherland on Statutory Construction* § 59.02 at 4 (1974). *Cf. Rogers, supra,* 244 F.2d at 483–84. *But cf. United States v. Bornstein,* 423 U.S. 303, 313–17, 96 S.Ct. 523, 529–32, 46 L.Ed.2d 514 (1976) (False Claim Act's double damages provision is compensatory, to make the government whole for "costs delays, and inconveniences occasioned by fraudulent claims"); *Murphy, supra,* 560 F.2d at 209–11 (Truth in Lending Act's double damages provision is compensatory; doubling merely provides for liquidated damages).

---

**1.** It does not follow from this that Congress intended to import all of the peculiar rules of antitrust law into RICO, *see, e.g., In re Longhorn Securities Litigation,* 573 F.Supp. 255, 270 (W.D. Okla.1983). Indeed, RICO's legislative history makes this quite clear. *E.g.,* 115 Cong.Rec. 9567 (1969) (statement of Sen. McClellan).

**2.** Section 4 provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ... shall recover threefold the damages by him sustained ..." 15 U.S.C. § 15.

 

Though one of the three elements of the test indicates that treble damages RICO are remedial, it appears on balance that they are in fact penal. It would be plainly unjust to permit such an award against the receiver, for innocent depositors and creditors alone would be punished, not the putative wrongdoer, the bank. *Cf. Bowles v. Farmers National Bank of Lebanon, Kentucky,* 147 F.2d 425, 428–30 (6th Cir.1945) (treble damages under the Emergency Price Control Act of 1942); *Professional Asset Management, supra,* 566 F.Supp. at 137 (punitive damages under state law).

There is one, rather analagous case to the contrary, but the Court declines to follow it in the case at bar. *State Farm Fire and Casualty Co. v. Estate of Caton,* 540 F.Supp. 673 (N.D.Ind.1982). In *Caton,* the court held as a matter of law that treble damages under RICO could be assessed against the estate of a deceased individual. Initially, because the case involved an individual, and not a national bank, it is inapposite.[3] Secondly, as a decision of another district court, it is not binding.

Finally, *Caton* is not even very persuasive. Although the court employed the proper test of whether treble damages under RICO are penal or remedial, *id.* at 681, its analysis is unsound. Congress did not explicitly demoninate RICO's treble damages as remedial. It did provide that RICO as a whole "shall be liberally construed to effectuate its remedial purposes." 84 Stat. 947; 18 U.S.C. § 1961 note (liberal construction of provisions). But this does not necessarily imply that the statute is wholly remedial; rather, it simply directs the courts not to apply the traditional rule of strict construction in penal statutes. *See* 3 C. Sands, *supra,* § 59.07.

Furthermore, the *Caton* court's reliance on *United States v. Cappetto,* 502 F.2d 1351 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975), is misplaced as the premise from which to conclude that treble damages under Section 1964(c) are remedial. In *Cappetto,* the Seventh Circuit was considering a governmental injunction action under Section 1964(a) and (b), not a private action for treble damages under 1964(c). 502 F.2d at 1354–55. RICO cannot fairly be characterized *in toto* as either penal or remedial; instead, it must be analyzed *seriatim.* Certain provisions of RICO are clearly penal, 18 U.S.C. §§ 1963(a), (c), and others are remedial, 18 U.S.C. § 1964(a), (b). Its treble damages provision is not so plain, but the Court here concludes that it is essentially penal.

Accordingly, the FDIC's motion to strike the plaintiff's prayer for treble damages on his RICO claim should be and hereby is granted. If the plaintiff prevails on that claim against the FDIC, then he is legally entitled only to actual damages.

---

**3.** There is a strong argument that supports the court's decision in *Caton,* based on the facts.

*See id.* at 682. However, it simply does not apply here.